Next case for argument is 23-1757, Google again v. EcoFactor, again. Good morning. Please proceed. Good morning, Your Honors. May it please the Court, my name is Elizabeth Lawton of the law firm of Smith & Baluch, representing appellant Google. And as Your Honor, Judge Post said in the prior case, there are a lot of issues between the two cases. So I'd like to take a moment here just to sort of orient the Court as to the next issue that I'm dealing with. We're dealing with Hildebrand and not Wedekind. Yes, we are now talking about Hildebrand. So we have a very different reference here. And the issue that I'd like to discuss first forms a part of Google's appeal. And this issue concerns the boundary around or the scope of the claimed HVAC system. And this is in Claim 1. And while Claim 1 was found unpatentable, the reason that this matters is that it was found unpatentable under Ground 2, but not on Ground 1. And so because it wasn't found unpatentable under Ground 1, the Board did not reach Dependent Claims 4 through 6. So the reason that we're talking about Claim 1 here, and in particular Claim Element 1C, is because the issue is ultimately getting to Claims 4 through 6. And so, again, to orient ourselves, earlier we were sort of talking about the boundaries of the system as a whole. And I believe, as you said, Your Honor, Judge Lynn, a system can be sort of any two things, right? That's a nebulous term. And so here in the claim we have sort of a general system. And then within that we have what is an HVAC system. And that is specifically identified in the claim. So it's one of the components of the overall system. And the Board here erred in concluding that Hildebrand does not teach Claim Element 1C under Ground 1. And this Claim Element C recites one or more processors that receive measurements of outside temperatures from at least one source other than said HVAC system. So now what we care about is that the source is separate from the HVAC system. And the petition here, indisputably, mapped the claim HVAC system to the HVAC system as explicitly defined by Hildebrand. Hildebrand says HVAC system 12, which includes just the heating and the cooling equipment and the fan, is an HVAC system. And then the petition argued that Hildebrand's outside temperature sensor was external to that HVAC system, exactly what Hildebrand said it was, and that therefore this Claim Element was met. Now the Board rejected this mapping. Instead it concluded, and here I'm quoting from the Board's decision in Appendix 19, that the HVAC system claimed in the 5-6-7 patent, so there it's talking about what the scope of HVAC system as used in the 5-6-7 patent is, had to include more than just the heating and cooling equipment, and that it had to include any outside temperature sensor. Essentially what the Board said here was that Google was prohibited, for some reason, from drawing the mapping the way that it did in the petition, and again that mapping exactly tracked Hildebrand. And our position is that there's no basis for the Board's decision, really, any way one looks at it. We think that the Board's decision is best understood as implicitly construing the claimed HVAC system to determine what it must include, because it's saying, look, you can't define it this way. It has to be something else. So the dispute comes down entirely to this Figure 1 and Hildebrand, right? And you mapped this 22 as being outside, and the Board mapped it as inside, and they rely on expert testimony by echo factor. So given our standard of review, why is there a basis for dislodging the Board's conclusion about whether a skilled artisan would view sensor 22 as a different source than Hildebrand? Sure, so we submit that if you look at every single one of the pieces of evidence that it purported to rely on, none of them provide any substantial evidence. So first let's start with Hildebrand itself, right? Because echo factor identifies Hildebrand as supporting the position. Hildebrand says that its HVAC system is HVAC system 12. That's what it says. So how can Hildebrand support a position that the HVAC system is something else? I believe echo factor at one point says in its brief that Hildebrand refers to Figure 1 somehow as the HVAC system. That's incorrect. It never, ever says that. It says that Figure 1 is the system. Well, of course Figure 1 is the system. It's the OBRA broad overall system, just like, you know, similar to the claim, right? You have an overall system with other subsystems within it. So Hildebrand itself, the prior art itself, cannot provide substantial evidence support. So the next thing is that, is Google's experts Mr. Shaw's opinion. And so the board said, well, we're rejecting this because it's uncorroborated and unsupported. That can't be right because his opinion is exactly corroborated by Hildebrand. He's relying on and citing to Hildebrand. And Hildebrand is saying this is an HVAC system. And he's saying that's what a procedure would understand an HVAC system to be. That's the corroboration. It's not clear what else he was supposed to do there. He's pointing to the prior art's own identification of an HVAC system as representing how a procedure would understand what an HVAC system would be. So then let's look at Mr. Shaw's general background testimony, right? And this is the testimony that the board relied on, where the board suggested perhaps that he was saying that an HVAC system had to include more elements. So first of all, that testimony was not specific to the 567 patent or Hildebrand. And it never said that an HVAC system must include any of those other elements. It said it may, for example, include some of those elements, but it never said that it had to. And it also is completely silent as to whether or not an outside temperature sensor would be considered to be part of an HVAC system. So that testimony just cannot provide substantial evidence to support the board's decision. The board concluded at the bottom of Appendix 19 that because the outside zone temperature sensor is part of the HVAC system, Petitioner has not sufficiently shown that Hildebrand teaches Limitation 1C. And they reached that conclusion by referencing Hildebrand's text from 561 to 611. Yes, Your Honor. Basically making the argument that, well, you need that outside temperature sensor to work. Right. Does it matter whether the system has to work or not? Well, I think Your Honor is exactly hitting on a very important point here. The board sort of attempted to reason by pointing to Hildebrand and saying that, well, the HVAC system This is, again, contrary to Hildebrand's own description, right, of what it says its HVAC system is. It says that, well, it uses outside temperature measurements from an outside temperature sensor, right? What that description there is, is basically talking about the fact that it uses it in its calculations. And it needs that data in order to provide the efficiency calculation that it desires. It does need outside temperature data, and that's where it gets it from. But I think that their attempted reasoning that because it gets this data from an outside temperature sensor, that this outside temperature sensor must be a part of the HVAC system, this is circular. It doesn't actually stand up to scrutiny. Well, but without that outside temperature data, there would be no way to gauge the efficiency of the system. And that's what Hildebrand is all about. Well, if I may, Your Honor, if I could direct you to Claim 1 and to Claim Element 1C, right? So here, in the 567 patent, we already have an instance, right, where Ecofactor, in its patent, is using outside temperature data, right? It's getting it. It needs it in its calculations. It's there in the claim. But it's saying that it's getting it from a source other than the HVAC system. So if the mere fact that somebody needs outside temperature measurements means that that source of the measurements has to be within the system, then this claim language is actually impossible to satisfy. It can't mean that. There has to be some way to get outside temperature measurements that you need in your calculations, but have it be not part of the HVAC system for this claim language to have any meaning. So... Okay, so I mean, that's just going into another, I mean, we did no claim construction here, whatever. But according to Ecofactor's expert, and I think this aligns with Judge Lynn's concerns, it's that you look at Hildebrand, you look at the figure, and the temperature measurement is clearly, with all the arrows and stuff, it's part of the cooling and the heating system in the HVAC system. I would disagree with that. Well, how do you reach the conclusion it's outside? Because that's what you say? I mean, is there anything in Hildebrand that says this is outside? Well, Hildebrand says that its HVAC system is the heating and cooling equipment. It doesn't say, it identifies the outside temperature sensors separately. The problem is that, you know, if you look at the claim, we've got three different systems. A system, then a HVAC control system, and then a HVAC system. And it's hard to discern, you know, what we're talking about. And that leaves us in this quandary. It left the board in the same quandary about, you know, where do you draw the line? Where are the boundaries to this system, and what's in and what's out? And the problem for you is that the standard of review is a high burden. And, you know, it's hard for me to say that the board didn't have at least some substantial evidence to hang its head on. Well, Your Honor, I would respectfully submit that if really what we're talking about here is where do you draw the boundaries around this system, and what's in and what's out, then we're going to question the claim construction here. Did you ask for a claim construction? We did not ask for a claim construction. We pointed out in our reply that Ecofactor seemed to be making narrowing arguments, saying that, oh, no, it had to include these other things. And we said in our reply, they've asked for no, you know, narrowing construction. We're just submitting that it take its plain and ordinary meaning here, which would be consistent with Hildegrand. That's the HVAC system. That's what Hildegrand says. But you've got other issues that I assume you want to get to, so why don't we move on? Of course, absolutely. If I may, though, just very quick, just on that last issue, I just want to note, and we do describe this in the briefing, that the 567 patent repeatedly describes the HVAC system as being separate from the thermostat. And so if we really do have a boundary issue here, then this is a claim construction issue that this Court can address de novo, and that if one looks at that evidence, the petition's mapping is, in fact, consistent with the manner in which the 567 patent treats this issue. And so unless there are any further questions on that, I will take Judge Brewer's suggestion and move on to the next issue. I know you're into your rebuttal, but could you at least briefly mention the 8F issue? Yes, yes, Your Honor, the 8F issue, of course. And so this, and for the panel, this issue relates to the Board's finding that the Spalink reference does not teach claim element 8F, and this is under Ground 4. So now we're talking about a different reference. We're talking about the Spalink reference here. And so claim element 8F is the only claim element that EcoFactor disputed before the Board, and the Board's finding regarding unpatentability, of no unpatentability, was just only in view of claim element 8F. And so there we have an issue where there has to be the comparison of the relative efficiency. Okay, and the problem here is, if I've got the right piece of this puzzle, this is the one where the Board said they rejected the comparison between a computer model, and let's assume we agree with that, and therefore we're left with whether you preserved and developed the alternative argument that deals with two paragraphs, 44 and 56. Right, right, right, 44 and 58. And I don't see, I mean, you leave with one sentence on that and everything else has to do with the computer modeling. So I'm not seeing where the Board fairly abused its discretion in saying that that argument wasn't adequately developed and preserved. Sure, Your Honor. So I guess I know that I would say that it's an alternative argument. I think that our point is that it all forms a part of the same argument. Okay, whether it's the same or whatever, the portion about computer models, take that off the table and assume the Board and we were not satisfied that you can use a computer model. So then we're left with what's left. Sure, so there was the reference to paragraph 44, which does discuss actually explicitly that the more buildings from which data is collected, the more accurate the model and comparisons may be. So that's linking it directly to the use of the model and we're talking about the fact that there is a comparison going on there. And then also, as we explained in our briefing, that's not the only place that paragraph 44 was discussed. In fact, the petition says, you know, as discussed above, right? Where's the petition? Sorry. Let's go to the petition. Okay. So in particular, I'm discussing appendix 165. And here it says, as discussed above, Spalink first teaches that the performance metrics of climate control systems... I'm sorry, I'm not finding you. Oh. I'm on 165. 165. And this is right at the bottom of the page under claim element 8F.  And so that's where we begin the discussion of this particular claim element and then talking about the model. Okay. But as discussed above, the board... I mean, this court has made very clear, I think, in its precedent, that the board has to evaluate the petition as a whole here. And in fact, as discussed above, and in particular with respect to claim element 8D, which was actually undisputed. Ecofactor never disputed that claim element 8D was met. There's an entire discussion there, in particular referencing paragraph 44 and also the portions of Spalink regarding the model, explaining how those disclosures relate and how this comparison is done of performance metrics. And also, and particularly, Your Honor, that is discussed at appendix page 160 to 163. And then also, additionally, there's also discussion... And this is the overview under the heading of what? The gram factors? No. This is actually the discussion for 8D, in particular. Claim element 8D, appendix 160 to 163. And then there's also additional discussion in the overview section. So before we actually get to the claim mapping, you know, there's an overview of the references. There's also discussion at appendix 152 and 153. So I think that might be what Your Honor is referring to, the section right before we get into the gram factors. There's also a discussion there that's specifically calling out 44 and talking about the nature of this comparison. And so I think that the petition as a whole makes clear that these arguments are linked together, that this paragraph 44 relates to the discussion of the use of the model, and that, in fact, it provides evidentiary support for the fact that the model can enable these types of comparisons. And to be clear, the board said that, oh, you know, the computer model is not a second HVAC system. Well, we never argued that. We never said the model itself is a second HVAC system. We said that using a computer model, one can make a comparison, as Spalink specifically teaches that it can be done, between a first HVAC system, here the one that's in the building at issue, and then a second HVAC system, which is from any one of the other buildings, right, from which Spalink is collecting data. And so I would submit that those portions of the petition make this clear. And then also at the reply, I think we also made this clear, too, that 44 generally supports the overall general argument. And so we think that the board's failure to consider those portions of Spalink really infected its analysis with respect to the model. I think as a whole, Spalink's teachings make very clear that these types of comparisons are being performed between the first HVAC system and then another HVAC system, for example, using the model. Using the model. Yes, that's one of the ways in which it can be done. Okay, but the issue is if we're not doing the computer, you're talking about the computer model. So the discussion with the plan element 8F, I think, focuses on the fact that the model is one of the ways in which this can be done. Okay, so assume that's not sufficient, because assume that we agree with the board that you can't. A computer model is not sufficient. I have the one sentence on 165 that refers to performance metrics can be compared between buildings. Right, and then I think I would, again, refer your honor to the portions that we just discussed, the discussion with respect to claim element 8D that's talking about the comparison determined the relative efficiency of a first HVAC system and a second HVAC system, which, again, Ecofactor did not dispute below as to claim element 8D. And then also the overview discussion of Spatelink that we just discussed.  Okay. Thank you, your honor. Thank you. We'll resource somebody, Donald. Good morning, your honors. James Pickens again for Ecofactor. As you noted, this one is really full of issues. And I'm happy to start wherever you'd like. We could start where we left off with claim 8. Well, do you have a response? Why don't we start where we left off, where I pointed to one portion of the petition and your friend pointed to other portions, which I think she was representing to support the fact that leaving aside the computer model, there was a sufficient argument made, and the board didn't acknowledge that. So what's your response? So my response is twofold. First, this came up at the hearing below. The board asked my friend, please help us with this. We are looking at your petition. We only see one theory, which is the computer model theory. We don't see the second theory. And they had a dialogue, and the board got them to agree effectively through their questioning that aside from this single sentence at the bottom of appendix 165, then they go on for pages and pages and pages, and it's just the reference model theory. That's really the theory for ADAPT. And the board cited that in its final written decision, that colloquy that it had during the oral argument with my friend, because the board wanted to make clear that it did try and look to see at oral argument, and explored this issue with them about, you know, you're saying you have this second theory about performance metrics. We don't see that in your petition. And the board rightly perceived that in the actual analysis that the petition presents, when they actually do the mapping for ADAPT, that shows up on appendix 167. And on appendix 167, they're saying that it's the reference model. That's their theory. So I think that the board did two things right. One, it actually explored during oral argument whether or not the petition had successfully preserved two theories. And the board, in its discussion with counsel, counsel agreed that it really didn't, you know, because it was sort of this prefatory sentence leading up to the actual mapping and the analysis on appendix 166 and 167. And in that actual mapping and analysis, it was very consistent and clear that they were mapping the model and only the building model. And I think that the board was correct to say that what they're saying is the way in which these performance metrics are, the only way in which performance metrics are compared is through the model. That was the board's understanding of the petition. And that's actually what the petition's alleging. It's not really articulating on appendix 165, 166, and 167 that there are two separate comparisons going on. That's really not in there. I think what they're saying is the way in which this limitation is satisfied. But if you agree that this last sentence on 165 does include the spandex discussion of an actual building in paragraph 44, whatever, they start with the rest of the stuff on the computer model, which is being rejected, as one way of performing it, suggesting that there are other ways of performing it, which are included in the first sentence. I guess bottom line is if the board had decided to take this as an alternative argument and relied on that, would you be here saying that was an abuse of discretion? Well, I think, honestly, probably, because I honestly— I think that's the wrong question. Do you think you would prevail if you were making an argument? I respectfully submit that we would, because this is—it's so conclusory. It's a single sentence. It doesn't go into any specifics. And it doesn't actually say that there are multiple ways you can do it, and one of them is with the building model way. But there are other ways, too, and it would be obvious to do these— you know, they could have said all that, and they didn't. Why don't you turn to the plane mapping question in 1C? Absolutely. So, 1C, I submit that the issue was really the petition presenting a mapping, and they argued that the claim language HVAC system would map to HVAC 12 in Figure 1. So the board then made its own assessment of whether that's how a person of ordinary skill in the art would map HVAC system in Figure 1. And the board had substantial evidence supporting its decision that that's not how a person of skill would do the mapping. Is that just your expert? Both experts. So the board actually cited both experts in its decision. So on Appendix 19, the board relied on and credited EcoFactors expert testimony, which was Dr. Palmer, and they cited his testimony. You can see his testimony at Appendix 1304. That's what corresponds to the citation that the board made to Exhibit 2002 on Appendix 19. So the board credited our expert's opinion. Our expert's opinion was that looking at Figure 1, a person of skill in the art would see that the outside sensor in this figure, in this reference, is part of the HVAC system, because just in this system, it's a direct input, it's local, and it's directly influencing when it turns on and off. The board also noted that, as our expert noted in his declaration, Google's expert agreed with him. Mr. Shaw, who was Google's expert, also opined in his declaration below that a person of skill in the art understands an HVAC system includes more than just the cooling and the heating unit and the fan. Their expert said it also includes numerous other components, including the thermostat, which the board said, well, if your expert says it includes the thermostat, which has sensors in it, and EcoFactors expert Dr. Palmer also says that a posito would understand the HVAC system includes the thermostat and the sensors that energize the cooling. Both experts agreed that this is how you would read Figure 1. You would read Figure 1 that the HVAC system includes the sensor. And so since both experts agreed and the board considered the expert testimony on both sides and credited our expert's opinion over theirs and, in fact, kind of found that both experts were on the same page, I think the board had substantial evidence for its determination that the petitions had failed to prove that that mapping is how a person of skill would actually interpret the reference. So there's two experts. The board credited ours. The board found that their expert was really agreeing with our expert. And the board also analyzed Figure 1 and it saw a lot of the same things that your honors noted in the discussion with my friend that when you really look at Figure 1, the outside sensors are directly coupled to and part of what the person would think is the HVAC system in this reference. Because system is not defined, even though persons of skill in the art might consider the HVAC system to include the outside zone temperature sensor, what's to prevent Google from reading the claim on the device and concluding that the way they read it, the system is something different? Because it's undefined, so they're saying, okay, I can read the claim on this part of the reference which is in and of itself enough to be a system. So I think that the problem is that only a Turing argument supports that sort of artificial mapping. The experts who both provided their opinions below, they didn't see it that way. And we have to apply the lens of the ordinary artisan. And from their point of view, that mapping that you just described isn't how they see it. It's just neither one would say under oath that the HVAC system in Hildebrand would be understood as limited to the cooling unit and the heat unit. Both of them, instead, they agree that in this art, when we see HVAC system in this claim or in this reference, it does refer to more than just the cooling unit. It includes the thermostat. It includes the sensors that energize the system internally. If it's permissible, Your Honors, I'd like to turn to, you know, if you have any other questions, but I think that the board was right on both the issues we've discussed so far. I think it was correct that, you know, it had substantial evidence to credit our experts' opinion. It also found their expert was consistent with ours. And so I think under the standard of review here, the right thing to do is to affirm the board's finding. It didn't come up, by the way, but the other thing that my friend is appealing on these claims. Well, they didn't address. Are you going to do five and six? Yeah, I was going to. They didn't raise it. I don't know why. But if you don't, I'm happy to move on. I just think... Can I go to cross-appeal? Sure. So in the cross-appeal, we're basically arguing that when you're going to do a motivation to combine analysis, you have to do the full analysis. If your theory is that an ordinary person of skill sitting in a room would pull three different systems and they would be motivated to put all three together, then you have to explain why. And it's not sufficient to say that sort of using our claim that the patent as a roadmap, it's not sufficient to just say, well, this piece, it would be obvious to combine one reference with that one and this piece, it would be obvious to combine this reference with something else. But then that wasn't the... The theory below was that you need... A person would combine all three, but there was no argument why. And I think that's just... Aren't they saying it would have been obvious to combine A and B and in addition, it would be obvious to add C to that combination? That's where I disagreed. I think what they said was just that it would be obvious to combine A and B, and it would be obvious to combine A and C. What's missing is an argument that once you've combined A and B, which they have to do for their theory, that you would then combine C with A and B. So your articulation, Judge Lin, I think that was what was missing from the below. If there was an argument below that having combined A with B, you would also need C, I wouldn't be making this argument. I wouldn't be able to. That's my argument, is that if you're going to do A, B, and C, once you've combined A and B, now you have to support that a combination of A and B plus C would be motivated. Otherwise, what we end up with is a situation where, for all we know, there could be many number of reasons why A and C might be compatible, but A, B, and C are not. So that's really the argument we're making. I think it's not a big ask for the petition to, if you need three references, go ahead and explain why all three are compatible. And don't sort of just gloss over it, as happened here, and I would say it's just an omission. And given that it's not there, there was no theory for the board to evaluate, which the ground that they raised in the petition was A, B, and C, but they never said it would be obvious to take A and B together and add C. And so that's our basis for the cross-appeal. Okay? Okay. If there's nothing further, Your Honors, thank you very much. Thank you. We'll restore two minutes. Thank you very much, Your Honor. I'd like to address the cross-appeal. So, again, the only issue that's been raised is the issue of motivation to combine. They did not raise reasonable expectation of success. And so these arguments about whether or not these things could have been combined or there's something about some kind of incompatibility, that has not been raised. And, in fact, the board's findings were based off of undisputed testimony below about the combinability. What say you to the argument he made with regard to combining the three references, the two versus the three and then one? Well, I would say that I don't think he's identified any precedent from this court that supports this position. The In re Magnum Tools case is not on point. In fact, they admit that it's not on point kind of in their briefing, because there was an attempt, essentially, to borrow rationales from other references, and the court said that that was impermissible. Whereas here, no, we're just citing back to the rationale that was provided in the prior ground and saying that that applies. There's no impermissible borrowing there, so I think they themselves state in their briefing that that is a distinction, so I don't think that case is on point. Instead, I would direct this court to the court's opinion in the Intellectual Ventures II case that was cited in Google's briefing. I think it's directly on point here, and I think it confirms the propriety of the board's approach. Intellectual Ventures, who was the patentee, raised a number of arguments that were sort of virtually identical to what Ecofactor is saying here, and the court rejected all of them. I think it goes from about pages 7 to 13 or so of that case, but essentially saying that, look, this is a flexible analysis under KSR, and if you have explained the motivation and you've explained how these things relate, then that is sufficient. And we submit that it's certainly sufficient here for those reasons, and also, again, because we explicitly incorporated the prior analysis in the petition. Okay, thank you. Thank you, Your Honors. We'll give you one more if you need it or want it for the process. Thank you. Very briefly, Your Honors, we submit that the applicable test is from, for example, it's in Belvin, Inc. versus BurkTech 805 F3rd 1064-1073 Federal Circuit 2015. We cited in our reply brief that the motivation of combined inquiry asks whether a person of ordinary skill in the art would have been motivated to make the combinations of prior art to arrive at the claimed invention. So here, the combination that they want is three references. That's the combination. And so that's... The board actually agreed and noted on Appendix 38 that their theory does not mention one of them, Pan-Austrian. And so they just didn't address the threshold test, which is that you would be motivated to make this combination of A, B, and C. Okay, thank you. Thank you. We have both sides in the case to submit it.